UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WOODS CAPITAL, LLC AND<br>WOODS EQUITY PARTNERS, LLC,<br><br>                   Plaintiff,<br><br>- against -<br><br>WESTWIN ELEMENTS, INC.<br><br>                  Defendants. | No.:<br><br>**COMPLAINT** |

Plaintiffs Woods Capital, LLC and Woods Equity Partners, LLC, by and through their attorneys, allege upon knowledge of their own acts, and upon information and belief as to the acts of others, as follows:

1. This is an action seeking a declaratory judgment as to the rights of Plaintiffs Woods Capital, LLC and Woods Equity Partners, LLC and obligations of Defendant Westwin Elements, Inc. under a contract, the Equity Advisory Engagement Letter.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Plaintiffs are New York limited liability companies whose sole member is a citizen of New York State, Defendant is a Delaware corporation with offices in Oklahoma, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

3. This Court has personal jurisdiction over Defendant because Defendant irrevocably consented to the exclusive jurisdiction of the state and federal courts of New York, New York to resolve any dispute related to the parties' agreement. This Court also has personal jurisdiction over Defendant because it entered into an agreement with Plaintiffs which are businesses based in New York.

4. Venue is proper in the United States District Court for the Southern District of New York because Plaintiffs and Defendant irrevocably agreed that any action or proceeding arising out of the contract at issue here would be resolved in any state or federal court sitting in New York County.

## PARTIES

5. Plaintiff Woods Capital, LLC ("Woods Capital") is a limited liability company organized under the laws of New York with offices in New York.

6. Plaintiff Woods Equity Partners, LLC ("Woods Equity") is a limited liability company organized under the laws of New York with offices in New York.

7. Non-party Michael Woods is the owner and sole member of both Woods Capital and Woods Equity (collectively referred to as "Woods LLC" or "Plaintiffs"). Mr. Woods resides on Long Island and is a citizen of New York State.

8. Defendant Westwin Elements, Inc. ("Westwin" or "Defendant") is a Delaware corporation with its principal place of business in Oklahoma City, Oklahoma.

## FACTUAL ALLEGATIONS

9. Woods LLC is a financial advisory firm providing institutional-grade financial structures, advanced modeling, and capital solutions in the innovation, infrastructure, energy, and technology sectors. Woods LLC's current work includes a government-created coalition developing infrastructure to support the lifecycle of lithium batteries, a university-backed consortium developing a technology hub for critical minerals, and a state advisory board seeking investment in the recovery of rare earth metals.

10. Woods LLC is owned by Michael Woods. Mr. Woods previously served as the Chief Executive Officer and Chief Operating Officer of Rothschild & Co. Asset Management U.S.,

Inc., a Global Partner of Rothschild & Co., and as Chief Executive Officer of DWS Investments and Head of the Americas, Global Client Group, for Deutsche Bank Asset & Wealth Management.

**A.     The Equity Advisory Engagement Letter and Exhibit 1**

11.     In December 2024, Woods LLC was contacted by Defendant Westwin, an Oklahoma corporation that is building what will be the only major nickel refinery in the United States. Westwin was interested in Woods LLC based on its experience and known relationships in the United States and Canada.

12.     Westwin sought assistance with obtaining investors for a Series B financing which intended to raise $65 million in equity, an amount later increased to $100 to $125 million. Westwin also sought $250 million of debt financing but believed it could obtain such financing on its own.

13.     On or about February 12, 2025, the parties executed an Equity Advisory Engagement Letter (the "Agreement"). A true and correct copy of the Agreement is attached as Exhibit A.

14.     The Agreement stated that Woods LLC would

> provide financial advisory services to the Company in connection with evaluating strategic and financial alternatives including, but not limited to, project financing modeling, direct investments, sale of all or part of the Company equity, business or assets of the Company or other significant corporate transaction (collectively a "Capital Raise" and each of the foregoing a "Transaction") with one or a more investors or financing sources (each, a "Potential Investor"). WOODSC will provide financial advisory services as customarily may be provided by WOODSC in connection with engagements of this type.

Exhibit A at 1.[1]

15.     During Woods LLC's engagement, it had

> the exclusive right, subject to limitations agreed herein, to act as (i) a lead managing underwriter, a lead initial purchaser or lead placement agent for any financing involving equity securities of the Company undertaken by the

---

[1] All terms not otherwise defined herein have the same meaning as in the Agreement and Exhibit 1 thereto.

> Company in connection with the Transaction or otherwise (in each case acting as a joint book runner), and (ii) financial advisor to the Company in the event of any significant potential acquisition, disposition or other extraordinary corporate transaction (other than the Transaction) involving the Company or any of its assets, securities or businesses, whether by way of purchase or sale of securities or assets, merger, consolidation, reorganization or otherwise[.]

Exhibit A at 7.

16. For the services provided by Plaintiffs under the Agreement, Defendant Westwin agreed to pay a series of fees.

17. First, Westwin would pay Woods LLC a Retainer Fee of $50,000 with the execution of the Agreement. Exhibit A at 2.

18. Second, upon an announcement by Westwin of its first Transaction, or the execution of a binding definitive agreement with respect to that Transaction, Defendant Westwin would pay Plaintiffs a Milestone Fee of $250,000. Exhibit A at 2.

19. Third, Defendant would pay Plaintiffs a Capital Raise Fee in an amount equal to 4% of the aggregate amount of equity financing irrevocably committed at closing for a Capital Raise, payable upon the first closing. Exhibit A at 2–3.

20. If an equity investment was sourced by both Westwin and Woods LLC, Defendant would pay Defendants a Capital Raise Fee equal to 2% of the amount of the investment. Exhibit A at 3. "Mutually sourced" was defined as an investment for which Woods LLC provided "any material support in facilitation, structuring, negotiating, or security such investment, regardless of the initial point of introduction." *Id.* An investment would not be considered "mutually sourced" if Woods "does not demonstrably provide" any material support in facilitating, structuring, negotiating, or securing such investment. *Id.*

21. Certain potential investors were included on an Exclusion List compiled by Westwin. Exhibit A at 3. Woods LLC was not entitled to a Capital Raise Fee if those investors on

4

the Exclusion List entered into a binding term sheet before April 15, 2025; after that date, Woods LLC was entitled to a 2% Capital Raise Fee. *Id.*

22. Finally, in the event a Transaction was not consummated, Westwin would pay Woods LLC a Termination Fee in an amount equal to 2% of any termination or breakup fee that was payable to Westwin in connection with the Transaction. Exhibit A at 4.

23. To "ensure transparency in the sourcing process and to avoid any disputes regarding fee entitlement," Westwin agreed to "coordinate in good faith" with Woods LLC. Exhibit A at 3. Westwin also agreed to provide "all information and data that [Woods LLC] reasonably deems appropriate, in each case in connection with its services, and will not omit or withhold any material information." *Id.* at 5.

24. Westwin and Woods LLC agreed in the Agreement that any offers and sales of Westwin securities would be through Entoro Securities, LLC ("Entoro"), a registered broker-dealer that worked with Woods LLC. Exhibit A at 1–2. One month later, Defendant Westwin and Entoro entered into a placement agent agreement (the "PAA") that required that all funds raised by Westwin be deposited to escrow at Entoro.

25. The Agreement allowed either party to terminate the relationship at any time upon written notice. Exhibit A at 7. Certain rights and obligations of the parties survived termination, however. *Id.*

26. First, if Westwin consummated a Transaction within twelve (12) months of termination, it remained obligated to pay Woods LLC the fees set forth in the Agreement, including the Capital Raise Fees and the Termination Fee. Exhibit A at 7. These post-termination fees shall be referred to collectively as "Tail Fees."

27. Second, Woods retained the right for six (6) months after termination of the Agreement to act as lead underwriter, purchaser, or placement agent for any financing or act as

5

financial advisor in the event of any significant acquisition or other corporate transaction. Exhibit A at 7.

28.     Woods LLC and Westwin irrevocably agreed that any action arising out of or relating to the Agreement would be resolved by federal or state court in New York County. Exhibit A at 10. The Agreement is governed by New York law. *Id.* at 11.

29.     Although Westwin separately sought debt financing, its conversations with banks and other debt financiers were not immediately successful. Westwin then asked Woods LLC to also assist it with raising debt.

30.     In early May, Plaintiffs and Defendant executed Exhibit 1 to the Equity Advisory Engagement Letter by and between Westwin Elements, Inc., and Woods Capital, LLC, and Woods Equity Partners, LLC ("Exhibit 1"). A true and correct copy of Exhibit 1 is attached as Exhibit B.

31.     Exhibit 1 provided that, in the event Westwin secured debt financing, Plaintiffs would receive a fee equal to 1% of the Transaction Value payable upon the execution of definitive agreements and a fee equal to 3% of the aggregate amount of financing irrevocably committed at the closing of a Transaction. Exhibit B at 1. Both fees were identified as Capital Raise Fees and are thus within the Tail Fees as defined above. *Id.*; Exhibit A at 7.

**B.     Woods LLC Performs Under the Agreement; Westwin Does Not**

32.     Even before the Agreement was signed, Plaintiffs began preparing Westwin for investor inquiries. Woods LLC spent significant time revising Westwin's financial model and projections, refined Westwin's marketing materials and pitch decks to create an institutional quality offering, and created a comprehensive data room with all of the documents potential investors would require.

33.     Fundraising formally began for the equity in the last week of March 2025 and for the debt in May 2025. Plaintiffs, using their vast network of contacts, identified more than a

thousand potential investors that had interest in the infrastructure and minerals space and conducted a targeted email campaign followed by direct outreach to sector-focused potential investors. This work led to scores of phone calls, video conferences, and in-person meetings. Woods LLC also met investors interested in the critical minerals space – and thus ideal targets for Westwin – through road show presentations and at conferences in Toronto, Palm Beach, New York and Washington D.C.

34. Westwin likewise reached out to its network including those who had previously invested in Westwin.

35. As is standard, Woods LLC and Westwin initially engaged in this work as a team effort which creates the greatest potential for success in corporate capital raise efforts. Woods LLC kept Westwin apprised of its work through a shared customer relationship management ("CRM") system. After Westwin expressed its dislike of the CRM, Woods LLC began providing even more information by email, phone calls, and during weekly calls in which the parties discussed the investor pipeline, sharing information so that the status of communications with investors was fully transparent.

36. The first equity investment of $500,000 closed at the end of May, only two months from the start of the capital raise. Per the Agreement, this closing required Defendant to pay Plaintiffs the $250,000 Milestone Fee. Westwin complained about this fee and asked Woods LLC if it could defer payment. Although Woods LLC tried to do so, it was unable to because the PAA required Westwin, through the Entoro escrow, to pay Woods LLC all fees contractually owed under the Agreement.

37. Soon thereafter, Defendant Westwin began asking Plaintiffs Woods LLC to change the terms of the Agreement.

38. Defendant first sought to require that Plaintiffs add to the Agreement an obligation to bring five "qualified equity meetings" and one "qualified debt meeting" to Westwin each month. As Woods LLC explained, mandating a fixed number of meetings prioritized quantity over quality. Moreover, such requirements were unnecessary because, under the Agreement, the interests of Woods LLC and Westwin were aligned. The bulk of Woods LLC's compensation under the Agreement came not from the $50,000 Retainer Fee or the $250,000 Milestone Fee; it came from the Capital Raise Fees. Thus, the more funds that Woods LLC helped Westwin to raise, the more Woods LLC would benefit.

39. Defendant Westwin next sought to exclude investments from certain sources from the Agreement and to limit the Capital Raise Fees to investments where Woods LLC provided "material support." To qualify as material support under Defendant's proposed change, Woods LLC's contribution had to be a "primary factor" in the funding, involve a "significant expenditure" of resources, or result "in tangible progress toward funding." Plaintiffs Woods LLC again declined to amend the Agreement with such language.

40. Westwin also began sharing less information and became generally less cooperative. After initial communications and joint meetings with potential investors, Woods LLC would be excluded once those investors expressed serious interest. Westwin repeatedly refused to allow Plaintiffs to attend crucial meetings with major investors that were close to making a final decision. Woods LLC persistently warned Westwin that such actions were contrary to the Agreement's requirement that Westwin coordinate with Woods LLC to ensure transparency in the investment sourcing process as well as Westwin's obligation to provide all information and data requested by Plaintiffs. *See* Exhibit A at 3, 5.

41. Westwin also tried to replace Plaintiffs in their role as lead underwriters and placement agents with another firm. Plaintiffs advised that Woods LLC was happy to coordinate

efforts with another financial firm, even if it resulted in the reduction of Plaintiff's fees, but Westwin repeatedly declined this option. Woods LLC also reminded Defendant that, if the Agreement was terminated, Westwin would still be obligated to pay Plaintiffs the Tail Fees for the next twelve months.

42. On September 29, 2025, representatives of Westwin and Woods LLC joined their regularly scheduled weekly update call. Reviewing the investor pipeline, Plaintiffs asked Westwin about the status of the $5 million equity investment from a Texas-based family office, Westwin advised that it had received the $5 million. Woods LLC then asked whether the $5 million had been sent through broker-dealer Entoro. Defendant's response was that it was not required to do so because the investment was not part of the Series B fundraising. Woods LLC explained that it was irrelevant whether Westwin considered the investment to be "part of the Series B" because, under both the Agreement and the PAA, all investments must go through escrow at Entoro. Westwin acknowledged what Woods LLC had said but would not confirm that it would direct the money to Entoro.

43. Upon information and belief, as of the filing of this Complaint, the $5 million from the family office has not been sent to the Entoro escrow.

44. As a mutually sourced investment, Woods LLC is entitled to a fee equal to 2% of the $5 million family office investment, *i.e.*, $100,000.

45. To date, Plaintiffs have contacted more than 2,459 potential investors, receiving responses from approximately 1,600. More than sixty (60) of those prospective investors were given access to the Westwin data room entries to conduct due diligence reviews. An additional eighty (80) investors either expressed interest in participating in a subsequent round or formally declined participation after serious consideration.

46. By late September, investments of approximately $12.7 million in equity were scheduled to close within the next month, $5 million of which was from the Texas-based family office. Another institution had committed to an investment of $60 million and was in the process of negotiating the final term sheet. Numerous other potential investors had made verbal commitments totaling $120 million. Closing these deals would result in Capital Raise Fees payable to Woods LLC of approximately $4.1 million.

47. On the debt side, three entities that had expressed interest in providing more than a combined $450 million of financing – two of which were sourced by Woods LLC – had sent term sheets to Westwin. Upon the closing of these deals, Woods LLC's fees would total approximately $8.8 million.

48. In total, Woods LLC expects to make more than $12 million under the Agreement.

49. Woods LLC repeatedly reached out to Westwin, offering to assist with these and other potential investors that had made verbal commitments. Westwin's only response was to note the communication; it did not otherwise involve Woods LLC.

50. On October 6, 2025, Hunton Andrews Kurth LLP, acting as outside counsel for Defendant Westwin, sent a letter to Plaintiffs (the "October 6 Letter") terminating the Agreement.

51. The October 6 Letter also asserted that Woods LLC had "failed to perform its obligations as financial advisor in any meaningful or effective capacity, and has not provided any material support in facilitating, structuring, negotiating, or securing investments" and that Woods LLC's representations as to its capabilities, including but not limited to its connections in the investment and critical minerals sectors, were inaccurate.

52. Plaintiffs responded to the October 6 Letter on October 10, 2025 (the "October 10 Letter"), strongly objecting to its characterization of Woods LLC's work and experience. The October 10 Letter reviewed the work that Woods LLC had done to prepare Westwin for investors,

Woods LLC's extensive and successful outreach to potential investors, and the term sheets delivered to Westwin for both the debt and equity. The October 10 Letter also reviewed Woods LLC's experience in raising funds for semiconductor plants, biotech centers, quantum laboratories, energy infrastructure projects, lithium battery recyclers and manufacturers, and critical mineral and material companies. Finally, the October 10 Letter reminded Defendant that, notwithstanding its termination of the Agreement, Woods LLC retained the right to act as lead underwriters and placement agents for the next six (6) months and Westwin was required to pay Woods LLC the Tail Fees for any investment made within the next twelve (12) months.

## CAUSE OF ACTION

### Declaratory Judgment

53. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 52 above as if fully set forth herein.

54. The Agreement is a valid and binding contract. *See* Exhibit A.

55. Plaintiffs have performed under the Agreement.

56. Defendant has repeatedly breached and/or attempted to breach the Agreement by, among other things, excluding Plaintiffs from meetings and refusing to share information.

57. Based on Defendant's September 29, 2025 statement that it does not need to use Entoro for the $5 million family office investment and the fact that Entoro has yet to receive these funds in escrow, Plaintiffs believe that Defendant intends to further breach the Agreement by refusing to pay Plaintiffs the $100,000 fee for the $5 million funding and by terminating the PAA with Entoro.

58. Based on Defendant's actions, including its attempt to retain a new underwriter and placement agent, Plaintiffs believe that Defendant will procure another lead underwriter and placement agent during the next six (6) months in breach of the Agreement.

59. Based on Defendant's decision to retain outside counsel and Defendant's statements in the October 6 Letter accusing Plaintiffs of (i) failing to perform their obligations under the Agreement "in any meaningful or effective capacity" and (ii) misrepresenting their capabilities, Plaintiffs expect that Defendant will refuse to pay the Tail Fees for any Transactions that occur within the next twelve (12) months which, as discussed above, are expected to exceed $12 million.

60. As a result, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment on Defendant's obligations to Plaintiffs under the Agreement.

61. A judicial declaration is necessary and appropriate to ensure that Plaintiffs receive the payments to which they are entitled under the Agreement.

62. For all of the above reasons, Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 that:

   a. Plaintiffs have performed under the Agreement

   b. all funds raised by Defendant must be sent through escrow at Entoro;

   c. Plaintiffs are entitled to a fee of $100,000 in connection with the $5 million family office investment;

   d. if at any time prior to October 6, 2026, there is a closing of any part of an equity Capital Raise, Defendant must pay Plaintiffs a Capital Raise Fee upon the closing of any part of a Capital Raise that is equal to 4% of the aggregate amount of financing irrevocably committed at closing unless such Capital Raise is mutually sourced or comes from the Exclusion List, in which caseDefendant must pay Plaintiffs a fee equal to 2% of the aggregate amount of such investment;

   e. if at any time prior to October 6, 2026, Westwin secures debt financing, Defendant must pay Plaintiffs a fee equal to 1% of the Transaction Value upon the execution of definitive agreements and a fee equal to 3% of the aggregate amount of financing irrevocably committed at the closing of a Transaction; and

f.      until April 6, 2026, Woods LLC shall retain the exclusive right to act as (i) a lead managing underwriter, a lead initial purchaser or lead placement agent for any financing involving equity securities of Westwin undertaken by the Defendant in connection with the Transaction or otherwise (in each case acting as a joint book runner), and (ii) financial advisor to Defendant in the event of any significant potential acquisition, disposition or other extraordinary corporate transaction (other than the Transaction) involving Westwin or any of its assets, securities or businesses, whether by way of purchase or sale of securities or assets, merger, consolidation, reorganization or otherwise.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that the Court enter an order:

A.      Declaring that:

1. Plaintiffs have performed under the Agreement

2. all funds raised by Defendant must be sent through escrow at Entoro;

3. Plaintiffs are entitled to a fee of $100,000 in connection with the $5 million family office investment;

4. if at any time prior to October 6, 2026, there is a closing of any part of an equity Capital Raise, Defendant must pay Plaintiffs a Capital Raise Fee upon the closing of any part of a Capital Raise that is equal to 4% of the aggregate amount of financing irrevocably committed at closing unless such Capital Raise is mutually sourced or comes from the Exclusion List in which case Defendant must pay Plaintiffs a fee equal to 2% of the aggregate amount of such investment;

5. if at any time prior to October 6, 2026, Westwin secures debt financing, Defendant must pay Plaintiffs a fee equal to 1% of the Transaction Value upon the execution of definitive agreements and a fee equal to 3% of the aggregate amount of financing irrevocably committed at the closing of a Transaction; and

6. until April 6, 2026, Woods LLC shall retain the exclusive right to act as (i) a lead managing underwriter, a lead initial purchaser or lead placement agent for any financing involving equity securities of Westwin undertaken by the Defendant in connection with the Transaction or otherwise (in each case acting as a joint book runner), and (ii) financial advisor to Defendant in the event of any significant potential acquisition, disposition or other extraordinary corporate transaction (other than the Transaction) involving Westwin or any of its assets, securities or businesses, whether by way of purchase or sale of securities or assets, merger, consolidation, reorganization or otherwise.

B. Awarding Plaintiffs its attorneys' fees, costs, and disbursements incurred in this action; and

C. Granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
October 13, 2025

                                                      Respectfully submitted,

                                                      By:    /s/ Mari K. Bonthuis
                                                      Mari K. Bonthuis

                                                      Sterlington, PLLC
                                                      228 Park Avenue S #97956
                                                      New York, New York 10003
                                                      (212) 433-2834
                                                      (212) 729-3034
                                                      mari.bonthuis@sterlingtonlaw.com

                                                      *Attorneys for Plaintiffs Woods Capital, LLC*
                                                      *and Woods Equity Partners, LLC*