# EXHIBIT A



## Equity Advisory
## Engagement Letter

February 12, 2025

**WESTWIN ELEMENTS, INC.**
Attn.:  **KaLeigh Long, CEO**
211 N. Robinson Ave. Suite N1100
Oklahoma City, OK 73102

Dear **Ms. Long**:

This engagement letter (this "Agreement") confirms the understanding and agreement between **WOODS CAPITAL, LLC,** and **WOODS EQUITY PARTNERS, LLC,** (collectively "WOODSC"), both being New York Limited Liability companies located at 2 Meadowspring Lane, Glen Cove, NY, 11542, U.S.A., and **WESTWIN ELEMENTS, INC.** a Delaware corporation duly authorized to do business in the State of Oklahoma, headquartered at 211 N. Robinson Ave., Suite N1100, Oklahoma City, OK 73102 with facilities located at 10925 SW Bishop Road, Lawton, OK, 73535 (together with any subsidiaries, the "Company") that WOODSC will act as the Company's financial advisor for the purposes, and on the terms and conditions, set forth herein.  The Company agrees to not work with another investment bank during the life of this agreement except for tax exempt bond issuance, should this type of raise be feasible.

WOODSC will provide financial advisory services to the Company in connection with evaluating strategic and financial alternatives including, but not limited to, project financing modeling, direct investments, sale of all or part of the Company equity, business or assets of the Company or other significant corporate transaction (collectively a "Capital Raise" and each of the foregoing a "Transaction") with one or a more investors or financing sources (each, a "Potential Investor")**.** WOODSC will provide financial advisory services as customarily may be provided by WOODSC in connection with engagements of this type.

The Company and WOODSC agree that any offers and sales of Securities in connection with, and only with, any Broker-Dealer required Transaction will be made on a best-efforts basis through WOODSC's Broker-Dealer, Entoro Securities, LLC, a Delaware limited liability

company ("Entoro Securities"), which is a registered broker-dealer and member of the Financial Industry Regulatory Authority ("FINRA"). If such a transaction is executed, the Company and WOODSC agrees to execute and deliver a Placement Agent Agreement with Entoro Securities containing such provisions, including terms, representations and warranties, and indemnifications customarily found in Placement Agent Agreements relating to transactions similar to the Transaction. The Company agrees to provide WOODSC / Entoro Securities with a "do not call list'', which it may update from time to time in the future, and which shall be binding unless Entoro Securities can offer evidence that they engaged in discussions with regard to the Transaction prior to the date on which the Company or a representative opened discussions or negotiations or Company agrees that WOODSC may engage. If required for regulatory purposes, this agreement may be assigned at the sole discretion of WOODSC.

In connection with WOODSC's engagement hereunder, the Company agrees to pay WOODSC the following fees in cash, and or securities as set forth below:

1. Retainer Fees:  The WOODSC standard fee is **Fifty Thousand Dollars ($50,000)** (the "Retainer Fee").  The Retainer Fee is to be fully creditable, to the extent previously paid, against any Success Fee payable upon the consummation of a Transaction. The Retainer Fee shall be paid only once to compensate WOODSC for all structuring and planning activities of the equity round for the Company.  The Retainer Fee is due upon execution of this agreement.  WOODSC will begin their role and responsibilities upon receipt of an executed copy of this Engagement Letter and payment of the Retainer Fee in the appropriate amount.

2. Milestone Fee:  A fee of **Two Hundred and Fifty Thousand ($250,000)** (the "Milestone Fee"), which will be paid promptly upon any announcement by the Company of an acceptable Transaction or execution by the Company of a binding definitive agreement with respect to the first Transaction.  The Milestone Fee is to be fully creditable, to the extent previously paid, against any Success Fee payable upon the consummation of a Transaction.

EQUITY CAPITAL RAISE:

3. Equity Capital Raise Fee: Upon the first closing of any part of the Capital Raise and upon each subsequent closing, if any, the

Company shall pay to WOODSC a cash fee (each, a "Capital Raise Fee") equal to **Four Percent (4%)** of the aggregate amount of any financing irrevocably committed at or in connection with such closing, whether or not drawn down.  If any portion of the Company's current equity round of **Sixty Million Dollars ($60,000,000)** is closed on or before **July 31, 2025**, then the Company shall pay WOODSC **Five Percent (5%)** on the closed capital and an additional cash bonus of **Two Hundred and Fifty Thousand Dollars ($250,000**) prorated to the amount of capital closed.

4. <u>Exclusion List:</u>  The parties agree that the Company will provide the WOODSC with a written list of up to 11 specific prospective investors (not including tax exempt bond financing) and all current Company shareholders (the "Exclusion List") within three (3) business days of the execution of this Agreement. WOODSC shall not be entitled to any fees or compensation in connection with any investment intentions made by individuals or entities on the Exclusion List, provided such investments are originated by a binding term sheet provided to the Company and shared with WOODSC by April 15, 2025.  After April 15, 2025, WOODSC shall be entitled to **Two Percent (2%)** equity capital raise fee compensation for any investments from such excluded parties, as outlined in this Agreement.

5. <u>Mutual Investment Sourcing Fee:</u> WOODSC shall be entitled to a cash fee equal to **Two Percent (2%)** of the aggregate amount of any investments mutually sourced by the Company and WOODSC, as outlined in this Agreement. For the avoidance of doubt, an investment shall be considered "mutually sourced" if WOODSC provides any material support in facilitating, structuring, negotiating, or securing such investment, regardless of the initial point of introduction. Conversely, an investment shall not be considered "mutually sourced" if WOODSC does not demonstrably provide any material support in facilitating, structuring, negotiating or securing such investment.  The Company agrees to coordinate with WOODSC in good faith to ensure transparency in the sourcing process and to avoid any disputes regarding fee entitlement.

<u>TERMINATION FEE:</u>

6. <u>Termination Fee:</u>  A fee in an amount equal to **Two Percent (2%)** of any termination, breakup, topping, other similar fee, liquidated damages or any other form of compensation or expense reimbursement or option or other similar right, whether payable in cash, property or securities (a "Breakup Fee"), payable to the Company pursuant to an agreement in respect of a potential Transaction if such Transaction is not consummated (the "Termination Fee"), which will be paid promptly upon receipt by the Company of any such Breakup Fee.

For purposes of calculating the Success Fee, the "Transaction Value" of the Transaction shall be (a) the aggregate value of any and all equity, project financing, capital lease obligations (whether consolidated, off-balance sheet or otherwise) assumed, retired, cancelled or defeased in connection with the Transaction of the Company outstanding at the closing of the Transaction.  Any amounts to be paid by the equity and/or project finance providers contingent upon future events shall be estimated for purposes of the Success Fee calculation at an expected value mutually agreeable to the parties to this Agreement at the time of closing of the Transaction, except that amounts held in escrow shall be deemed paid in full at closing of the Transaction.  All fees owed to WOODSC shall be remitted within a period of 10 days from the issuance of the invoice to the Company. The Company hereby acknowledges and agrees that, where applicable, project finance partner(s) possessing the capability to make direct payments to WOODSC shall remit all WOODSC fees directly from any project financing tranches and/or transactions to the Company. Consequently, the Company shall receive net payments, deducting WOODSC fees, from the project finance partner(s).

The Company will also reimburse WOODSC for its reasonable expenses (including legal fees, expenses and disbursements) incurred in connection with its engagement.  Such expenses (other than the fees and expenses of our counsel) shall not exceed Fifty **Thousand Dollars ($50,000)** without the prior consent of the Company, provided that such limitation shall in no way affect or limit the obligations of the Company as set forth on <u>Schedule I</u> attached hereto.

All fees, expenses and any other amounts payable to WOODSC or any other Indemnified Person under the terms of this Agreement and the Indemnification Agreement shall be paid free and clear of any withholding, deduction or charge for withholding taxes or deductions, goods and services tax, value added tax or other applicable or similar taxes.  If the Company is required to apply any deduction, withholding or charge with respect to such fees, expenses or other amounts on account of any tax of any nature, then the Company will pay such additional amount to WOODSC or any other Indemnified Person as will be required

to ensure that the net amount received by WOODSC or such other Indemnified Person is equal to the fees, expenses or other amounts it would have received in the absence of such deduction, withholding or charge.

The Company will provide or cause to be provided (and will use reasonable efforts to cause other potential parties to a Transaction to provide or cause to be provided) to WOODSC (i) such access to management and other representatives of the Company (or such potential party) as WOODSC may reasonably request, and (ii) all information and data that WOODSC reasonably deems appropriate, in each case in connection with its services, and will not omit or withhold any material information. The Company recognizes and consents to the fact that (a) in connection with its engagement, WOODSC will use and rely on the accuracy and completeness of all information provided to or reviewed by WOODSC (including, without limitation, publicly available information), and (b) WOODSC has no duty to verify any such information and does not assume responsibility for, and may rely without independent verification upon, the accuracy and completeness of any such information. With respect to any financial forecasts or projections made available to WOODSC by the Company or any potential party to a Transaction and used by WOODSC in its analyses, WOODSC shall be entitled to assume that such forecasts or projections have been reasonably prepared in good faith on bases reflecting the best currently available estimates and judgments of the management of the Company or the management of any potential party to the Transaction, as the case may be, and the Company represents and warrants that any financial forecasts or projections made available to WOODSC by the Company have been so prepared.

The Company represents and warrants to WOODSC that any information furnished to WOODSC by the Company in connection with the services provided by WOODSC pursuant to this Agreement, as of the date so furnished, was and will be true and correct in all material respects, and any such information will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. The Company will promptly notify WOODSC of any material change or development in the business or financial condition of the Company of which it becomes aware and will amend or supplement any of the information previously provided to WOODSC so that such information will not be misleading in any material respect or omit to state any material fact that is required to be stated or that is necessary in order to make any such information not misleading.

The Company represents and warrants that (i) any information made available by the Company, or by WOODSC with the consent of the Company, to any Potential Investor in connection with the Capital Raise (other than the information covered by clause (ii) of this paragraph), taken as a whole, will be correct in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading, and (ii) any projections provided by the Company, or by WOODSC with the consent of the Company, to any Potential Investor in connection with the Capital Raise will have been prepared in good faith and will be based upon assumptions which, in light of the circumstances under which they are made, are reasonable (the information and projections referred to in clauses (i) and (ii), and any other oral or written information provided by the Company, or by WOODSC with the consent of the Company, to any Potential Investor in due diligence, marketing or otherwise in connection with the Capital Raise, are hereinafter referred to as "Offering Materials"). The Company shall extend to each Potential Investor the opportunity, prior to such Potential Investor's participation in the Capital Raise, to ask questions of, and receive answers from, the Company concerning the Company and the terms and conditions of the Capital Raise, and to obtain any information that such Potential Investor may consider necessary in making an informed decision with respect to the Capital Raise or to verify the accuracy of the information contained in any Offering Materials provided to such Potential Investor in connection therewith. The Company shall be solely responsible for the contents of any Offering Materials made available to any Potential Investor by the Company or by WOODSC with the consent of the Company.

The Company agrees that any information or advice rendered by WOODSC in connection with this engagement is for the confidential use of the Board of Directors of the Company only in its evaluation of a Transaction and may not be provided to or relied upon by any other person without WOODSC's prior consent. The Company will not, and will not permit any third party to, use such information, or advice for any other purpose or disclose or otherwise refer to such information, or advice, or to WOODSC, in any manner without WOODSC's prior written consent.

Notwithstanding anything herein to the contrary, WOODSC and the Company agree that the Company (and its employees, representatives or other agents) may disclose to any and all persons, without limitation of any kind, the U.S. federal and state income tax treatment and tax structure of any Transaction and all materials (including opinions or other tax analyses) that are provided to the

Document Ref: YDMAP-MYJ2B-ZTZEA-ZHBME

Company relating to such tax treatment and tax structure, except as confidentiality is reasonably necessary to comply with securities laws. For this purpose, "tax structure" is limited to facts relevant to the U.S. federal and state income tax treatment of any transaction and does not include information relating to the identity of the parties, their affiliates, agents or advisors.

WOODSC's engagement hereunder may be terminated by the Company or by WOODSC at any time upon written notice and without liability or continuing obligation to the Company or to WOODSC (except for any compensation earned and expenses incurred by WOODSC prior to the date of termination and as specified below); provided that this paragraph, each of the paragraphs below, the Indemnification Agreement and provisions set forth above relating to the non-disclosure obligations of the Company and WOODSC will remain operative regardless of any such termination of this Agreement.  In addition, in the event that at any time during the twelve (12) months following termination of this Agreement, the Company consummates a Transaction or enters into an agreement that subsequently results in a Transaction or the payment of a Breakup Fee, the Company shall pay WOODSC the Retainer Fee, Success Fee, the Milestone Fee, Capital Raise Fee or the Termination Fee, as the case may be, as set forth above.

During the period of WOODSC's engagement hereunder, and for a period of six (6) months thereafter, WOODSC shall have the exclusive right, subject to limitations as agreed herein, to act as (i)  a lead managing underwriter, a lead initial purchaser or lead placement agent for any financing involving equity securities of the Company undertaken by the Company in connection with the Transaction or otherwise (in each case acting as a joint book runner), and (ii) financial advisor to the Company in the event of any significant  potential acquisition, disposition or other extraordinary corporate transaction (other than the Transaction) involving the Company or any of its assets, securities or businesses, whether by way of purchase or sale of securities or assets, merger, consolidation, reorganization or otherwise, in each case on terms and conditions (including receipt of internal committee approvals) customary for WOODSC for similar transactions, which terms and conditions will be embodied in one or more separate written agreements.

Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity other than the parties hereto or their respective successors and assigns, and, to the extent expressly set forth in the Indemnification Agreement, the Indemnified Persons (as defined in the Indemnification Agreement), any rights or

Document Ref: YDMAP-MYJ2B-ZTZEA-ZHBME

remedies under or by reason of this Agreement or as a result of the services to be rendered by WOODSC hereunder.  The Company acknowledges that WOODSC is acting hereunder as an independent contractor, that WOODSC is not acting as an agent of the Company or its security holders or in a fiduciary capacity with respect to the Company or its security holders, and that WOODSC is not assuming any duties or obligations other than those expressly set forth in this Agreement.  Nothing contained herein shall be construed as creating, or be deemed to create any agency, joint venture, or partnership.

The Company agrees that it shall be solely responsible for any decision made regarding a Transaction regardless of the advice provided by WOODSC with respect to the Transaction.  The Company acknowledges that the Company's appointment of WOODSC pursuant to this Agreement is not intended, and that WOODSC is not in a position, to achieve or guarantee the closing of the Transaction or the Company's achievement of the strategic or financial goals underlying the Transaction.  WOODSC does not provide legal, tax, accounting or audit advice, and WOODSC's role in any due diligence will be limited to performing such review as it shall deem necessary to support its own advice and analysis and shall not be on behalf of the Company.  The Company acknowledges that this Agreement does not constitute an express or implied commitment on the part of WOODSC to provide any financing to the Company in connection with the Capital Raise or otherwise, or act as a placement agent in connection with a private placement of securities.

This Agreement (including the Indemnification Agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof.  If any provision of this Agreement is determined to be invalid or unenforceable in any respect, it shall be interpreted to the fullest extent enforceable consistent with its intent, and such determination will not affect such provision in any other respect, which will remain in full force and effect.  This Agreement may not be amended or modified except in writing signed by each of the parties.

The Company acknowledges that WOODSC, in the ordinary course, may have received information and may receive information from third parties which could be relevant to this engagement but is nevertheless subject to a contractual, equitable or statutory obligation of confidentiality, and that WOODSC is under no obligation hereby to disclose any such information or include such information in its analysis or advice provided to the Company.  In addition, WOODSC or one or

more of its affiliates may in the past have had, and may currently or in the future have, investment banking, investment management, financial advisory or other relationships with the Company and its officers, directors and affiliates, potential parties to a Transaction and their officers, directors and affiliates or persons that are competitors, customers or suppliers of (or have other relationships with) the Company or its affiliates or potential parties to a Transaction or their affiliates, and from which conflicting interests or duties may arise.  WOODSC shall provide written notice to the Company of all such conflicts of interest within five (5) business days of the discovery thereof.  Subject to this notice requirement, nothing contained herein shall limit or preclude WOODSC or any of its affiliates from carrying on (i) any business with or from providing any financial or non-financial services to any party whatsoever, including, without limitation, any competitor, supplier or customer of the Company, or any other party which may have interests different from or adverse to the Company or (ii) its business as currently conducted or as such business may be conducted in the future.

The Company also acknowledges that WOODSC and its affiliates engage in a wide range of activities for their own accounts and the accounts of customers, including corporate finance, mergers and acquisitions, equity sales, trading and research, private equity, asset management and related activities. In connection with these businesses or otherwise, WOODSC and its affiliates and/or their respective employees, as well as investment funds in which any of them may have a financial interest, may at any time, directly or indirectly, hold long or short positions and may trade or otherwise effect transactions for their own accounts or the accounts of customers, in debt or equity securities, senior loans and/or derivative products relating to the Company or its affiliates, potential parties to a Transaction and their affiliates or persons that are competitors, customers or suppliers of the Company. Consistent with applicable legal and regulatory requirements, WOODSC has adopted policies and procedures to establish and maintain the independence of WOODSC's Equity Research Department and personnel.  As a result, WOODSC's research analysts may hold views, make statements or investment recommendations and/or publish research reports with respect to the Company, potential parties to a Transaction and/or their respective affiliates and the transactions contemplated herein that differ from the views of WOODSC's investment banking personnel. In addition, following public announcement of a Transaction, the Company acknowledges that WOODSC may disclose its engagement hereunder in any research report relating to the Company or its industry to the extent necessary to comply with applicable laws, rules and regulations and internal policies of WOODSC's Equity Research Department.

WOODSC may, in the performance of its services hereunder, delegate the performance of all or certain services as it may select to any of its affiliated entities; provided that no such delegation by WOODSC shall in any respect affect the terms hereof, and WOODSC shall be responsible for any acts or omissions by any of its affiliated entities in the performance of any services delegated to such entity.

The Company agrees to provide and procure all corporate, financial and other information regarding the Company and its control persons, as WOODSC may require, in order to satisfy its obligations as a U.S. financial institution under the USA PATRIOT Act. The Company represents, to the best of its knowledge, that none of (i) the Company, (ii) its directors, officers, employees, agents or any person, directly or indirectly, controlling or controlled by, or having more than a 5% beneficial interest in, the Company, or (iii) any person for whom the Company acts as an agent or nominee is an individual or entity named in, or targeted by the sanctions, restrictions or embargoes administered by the United Nations, the European Union, the United States Treasury Department's Office of Foreign Assets Control, HM Treasury of the United Kingdom, the Hong Kong Monetary Authority, the Monetary Authority of Singapore, the Ministry of Economy, Trade and Industry of Japan, the Department of Foreign Affairs and Trade of Australia and/or the Reserve Bank of Australia or any other international sanctions laws, regulations, restrictions or embargoes ("International Sanctions"). The Company further represents that none of the assets or businesses of the Company involved in the Transaction and none of the proceeds of a Transaction are or will be, directly or indirectly, used for, derived from, invested or loaned for the benefit of, or related in any way to any purpose or activity prohibited by or under the International Sanctions.

For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by facsimile transmission or other electronic or digital transmission shall constitute valid sufficient delivery thereof.

The parties hereby irrevocably consent to the exclusive jurisdiction of any New York state or United States federal court sitting in New York County over any action or proceeding arising out of or relating to this Agreement, and the parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard in such New York state or federal court. WOODSC and the Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its

security holders and creditors) irrevocably agree to waive all rights to trial by jury in any such action or proceeding and irrevocably consent to the service of any and all process in any such action or proceeding by the mailing of copies of such process to each party at its address set forth above.  The parties agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles).  The parties further waive any objection to venue in the State of New York and any objection to any action or proceeding in such state on the basis of *forum non conveniens*.

Each party has all legally necessary power and authority to enter into this Agreement.  All legally necessary action has been taken by each party for the authorization, execution, delivery of, and the performance of its respective obligations under, this Agreement, and each signatory below is duly authorized to sign this Agreement on behalf of the party it represents.

[*Signature page follows*]

If the foregoing correctly sets forth the understanding and agreement between WOODSC and the Company, please so indicate in the space provided below, whereupon this letter shall constitute a binding agreement as of the date hereof.

Very truly yours,

**WOODS CAPITAL, LLC**
**WOODS EQUITY PARTNERS, LLC**

By: _____
Michael Woods
President

Agreed to and Accepted as of the Date First Written Above:

**WESTWIN ELEMENTS**

By: _____
KaLeigh Long
CEO

# Schedule I
## Mutual Indemnification Agreement

In connection with the engagement of WOODS CAPITAL GROUP ("WOODSC") to render financial advisory services to WESTWIN ELEMENTS, INC. (together with its subsidiaries, the "Company") pursuant to the engagement letter, dated February 12, 2025, the Company and WOODSC are entering into this agreement.

1.      In the event that WOODSC or Company (individually, the "Party" and collectively the "Parties") or any of its members, partners, officers, directors, advisors, representatives, employees, agents, affiliates or controlling persons, if any (each of the foregoing, including each of the Parties, an "Indemnified Person"), become involved in any capacity in any claim, action, proceeding or investigation brought or threatened by or against any person, including the Company's security holders or creditors, related to, arising out of or in connection with WOODSC's engagement, WOODSC's performance of any service in connection therewith or any transaction contemplated thereby, the other Party hereto will promptly reimburse each such Indemnified Person for its reasonable legal and other expenses (including the reasonable cost of any investigation and preparation) as and when incurred.

2.      The appropriate Party will indemnify and hold harmless each Indemnified Person from and against, and agrees that no Indemnified Person shall have any liability (whether in contract, tort or otherwise) to the Party or its security holders or creditors related to, arising out of or in connection with, any and all losses, claims, damages, liabilities or expense to which any Indemnified Person may become subject related to, arising out of or in connection with WOODSC's engagement, WOODSC's performance of any service in connection therewith or any transaction contemplated thereby (whether or not arising out of any pending or threatened claim, action, proceeding or investigation initiated or brought by or on the Company's behalf and whether or not the Company or an Indemnified Person is a party thereto), except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a final, non-appealable judgment to have resulted primarily from such Indemnified Person's gross negligence, bad faith or willful misconduct.

3.      If for any reason the foregoing indemnification is unavailable or insufficient, then the appropriate Party shall contribute to the loss, claim, damage, liability or expense for which such indemnification is unavailable or insufficient  in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by the appropriate Party and its security holders on the one hand and the Party entitled to contribution on the other hand in the matters contemplated by WOODSC's engagement as well as the

Document Ref: YDMAP-MYJ2B-ZTZEA-ZHBME

relative fault of the Parties with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations.  The Parties agree that for the purposes hereof the relative benefits received, or sought to be received, by the Parties and their security holders shall be deemed to be in the same proportion as (i) the aggregate consideration paid or contemplated to be paid or received or contemplated to be received by the Company or its security holders, as the case may be, pursuant to a transaction contemplated by the engagement (whether or not consummated) for which WOODSC has been engaged to perform financial advisory services bears to (ii) the fees paid to WOODSC in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall WOODSC or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to WOODSC for such financial advisory services.

4.      The Parties' respective reimbursement, indemnity and contribution obligations under this agreement shall be in addition to any liability which the Parties may otherwise have, shall not limit or be limited by any rights any Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, WOODSC, and any other Indemnified Persons.

5.      If any claim, action, proceeding or investigation shall be brought, threatened or asserted against an Indemnified Person in respect of which indemnity may be sought against either Party, the Party shall promptly notify the other Party if the other Party is not a party to such claim, action, proceeding or investigation, provided that the failure to so notify the other Party will not relieve that Party from any liability that the Party may have on account of this agreement except to the extent the Party shall not have otherwise learned of such claim, action, proceeding or investigation and such failure results in the forfeiture by the Party of substantial rights and defenses.[1]

6.      The Parties agree that, without the other Party's prior written consent, it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation (whether or not the Party or any other Indemnified Person is an actual or potential party) in respect of which indemnification or contribution is reasonably likely to be sought hereunder, unless such settlement, compromise or consent includes an unconditional release from the settling, compromising or consenting party of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation and does not contain any adverse statement with respect to either Party.  No waiver, amendment or

Document Ref: YDMAP-MYJ2B-ZTZEA-ZHBME

other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.

7.     For the convenience of the Parties hereto, any number of counterparts of this agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same agreement.  Delivery of a signed counterpart of this agreement by facsimile transmission or other electronic or digital transmission shall constitute valid sufficient delivery thereof.

8.     The Parties hereby irrevocably consent to the exclusive jurisdiction of any New York state or United States federal court sitting in New York County over any action or proceeding arising out of or relating to this agreement, and the parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard in such New York state or federal court.  WOODSC and the Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its security holders and creditors) irrevocably agree to waive all rights to trial by jury in any such action or proceeding and irrevocably consent to the service of any and all process in any such action or proceeding by the mailing of copies of such process to each party at its address set forth above.  The parties agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.   The agreement and any claim related directly or indirectly to this agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles).  The Parties further waive any objection to venue in the State of New York and any objection to any action or proceeding in such state on the basis of forum non conveniens.

9.     Each Party has all legally necessary power and authority to enter into this agreement.  All legally necessary action has been taken by each party for the authorization, execution, delivery of, and the performance of its respective obligations under, this Agreement, and each signatory below is duly authorized to sign this agreement on behalf of the party it represents.

10.     This agreement shall survive any termination of this engagement.

*[signature line follows]*

The parties are signing this agreement as of the date first above written.

Document Ref: YDMAP-MYJ2B-ZTZEA-ZHBME

**WOODS CAPITAL, LLC**
**WOODS EQUITY PARTNERS, LLC**

By: _Michael Woods_____

Name: Michael Woods
Title: President

**WESTWIN ELEMENTS, INC.**

By: _KaLeigh Long_____

Name: KaLeigh Long
Title: CEO

# Signature Certificate

Reference number: YDMAP-MYJ2B-ZTZEA-ZHBME

| Signer | Timestamp | Signature |
|---|---|---|

**Michael Woods**
Email: michael@woodscap.com

| | |
|---|---|
| Sent: | 12 Feb 2025 22:32:10 UTC |
| Viewed: | 12 Feb 2025 22:33:14 UTC |
| Signed: | 12 Feb 2025 23:32:30 UTC |

**Recipient Verification:**
✔Email verified          12 Feb 2025 22:33:14 UTC

*Michael Woods*

IP address: 104.28.97.79
Location: Rosemount, United States

**KaLeigh Long**
Email: kaleigh@westwinelements.com

| | |
|---|---|
| Sent: | 12 Feb 2025 22:32:10 UTC |
| Viewed: | 13 Feb 2025 18:47:33 UTC |
| Signed: | 13 Feb 2025 18:49:40 UTC |

**Recipient Verification:**
✔Email verified          13 Feb 2025 18:47:33 UTC

*KaLeigh Long*

IP address: 143.109.166.182
Location: Lawton, United States

Document completed by all parties on:
13 Feb 2025 18:49:40 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature solution trusted by 50,000+ companies worldwide.

