# Sterlington

April 6, 2026

**By ECF**

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re:    *Woods Capital, LLC and Woods Equity Partners v. Westwin Elements, Inc.*,
       Case No. 1:25-CV-08458 (S.D.N.Y.)

Dear Judge Furman:

Plaintiffs/Counterclaim-Defendants Woods Capital, LLC and Woods Equity Partners, LLC ("Plaintiffs" or "Woods LLC") submit this response to Westwin Elements, Inc.'s ("Defendant" or "Westwin") April 1, 2026 letter-motion (ECF No. 31) (the "Motion") to compel responses to Interrogatory Nos. 3–5, 8, and 10 and production of documents in response to Request Nos. 3, 5, 7 and 9 (collectively the "Contested Discovery").

The Contested Discovery seeks documents and information concerning other clients of Woods LLC – the names of those clients (Interrogatory Nos. 3, 4), the agreements with those clients (Interrogatory No. 5, Request No. 3), the services and work product provided to those clients (Request Nos. 5, 7), the communications with those clients (Request No. 9), and the identities of other entities that worked with or invested in those clients (Interrogatory Nos. 8, 10). While relevance is a broad concept under Rule 26, it is "not unlimited." *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2016 WL 6779901, at *2–3 (S.D.N.Y. Nov. 16, 2016). Because the Contested Discovery is not relevant to any claim or defense, Defendant's Motion must be denied.

1.     **Documents and Information Concerning Other Clients of Woods LLC Are Not Relevant to the Allegations in This Action.**

       a.     Defendant Has Not Shown the Agreement (ECF No. 8-1) Is Ambiguous.

Defendant asserts the Contested Discovery is needed "because the contract term describing Plaintiffs' primary performance obligations is vague, indefinite, and/or ambiguous." Motion at 1. But merely ascribing ambiguity to contract language does not make it so. "Ambiguity exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement[.]" *Stone Key Partners LLC v. Monster Worldwide, Inc.*, 333 F. Supp. 3d 316, 324 (S.D.N.Y. 2018). Defendant does not explain the meaning it ascribes to the purportedly ambiguous language in the Agreement – "financial advisory services as customarily may be provided . . . in connection with engagements of this type" – much less posit how its interpretation differs from that of Plaintiffs. Without actual

ambiguity, Defendant has no reason to seek documents and information concerning Woods LLC's other clients and its argument fails as a matter of law.[1]

Even if Defendant had articulated an ambiguity in the phrase at issue, the necessary consideration of other language in the Agreement and its overall context render that argument untenable. "[W]e do not consider particular phrases in isolation, but rather interpret them in light of the parties' intent as manifested by the contract as a whole." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013). The Agreement defines the scope of Plaintiffs' financial advisory services: "evaluating strategic and financial alternatives including, but not limited to, project financing modeling, direct investments, sale of all or part of the Company equity, business or assets of the Company or other significant corporate transaction." ECF No. 8-1 at 1. It provides an objective standard to evaluate that performance – the occurrence of a "Capital Raise" or "Transaction" – with Plaintiffs' fees based on the size of the event and the source of the investor. *Id.* at 2–3. The inclusion of such terms sufficiently defines Plaintiffs' obligations here. *See Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 303 (S.D.N.Y. 2010) (finding contractual terms sufficient, despite alleged ambiguity, to determine parties' obligations where contract provided for compensation triggered by specific performance-related events); *see also Foros Advisors LLC v. Digital Globe, Inc.*, 333 F. Supp. 3d 354, 362–63 (S.D.N.Y. 2018) (noting that the critical terms of a binding contract include specifying the type of financial advisor, the scope of services, and the compensation to be provided).

b.      <u>Even if the Agreement Was Ambiguous, Third-Party Contracts, Services, and Communications Are Irrelevant Extrinsic Evidence.</u>

Defendant suggests the Contested Discovery is necessary to understand the "the types of services Plaintiffs 'customarily' provided[.]" Motion at 2. But such information is relevant only if it informed the intent of the parties to the Agreement. Under New York law, the "cardinal principle" of contract interpretation is that "the intentions of the parties should control" which is accomplished by looking to "<u>objective manifestations</u> of the intent of the parties as gathered by their <u>expressed words and deeds</u>." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props, LLC*, 467 F.3d 107, 125 (2d Cir. 2006) (emphasis added). Extrinsic evidence considered in this determination includes "(1) the acts and circumstances surrounding execution of the ambiguous term, (2) conversations, negotiations and agreements made prior to or contemporaneous with the execution of a written agreement, and (3) the parties' course of conduct throughout the life of the contract." *Nuance Commc'ns, Inc. v. Int'l Bus. Machines Corp.*, 544 F. Supp. 3d 353, 369 (S.D.N.Y. 2021). The Contested Discovery does not seek such evidence.

Indeed, Defendant does not even argue that its understanding of the "types of services" provided was informed by its knowledge of the services provided by Woods LLC to other clients. And the Motion cites no authority allowing discovery into third-party engagements and services – because "[o]rdinarily, contractual agreements between one of the contracting parties and third parties is irrelevant." *World Wrestling Federation Ent., Inc. v. William Morris Agency, Inc.*, 204

---

[1] Defendant cites *Tang Cap. Partners, LP. v. BRC Inc.* for the proposition that discovery allows a party to obtain extrinsic evidence. Motion at 1–2. But in *Tang*, the court – addressing contract interpretation on a motion to dismiss a breach-of-contract claim – had already found the contract ambiguous before making its passing remark about what discovery might "unearth." 661 F. Supp. 3d 48, 62, 64 (S.D.N.Y. 2023).

F.R.D. 263, 265 (S.D.N.Y. 2001). Federal courts in New York have rejected requests for production of such contracts. *See, e.g., Plata Cap. Ltd. v. Fin. Tech. Partners L.P.*, 2025 WL 3041923, at *2–3 (S.D.N.Y. Oct. 31, 2025); *Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 2015 WL 12777360, at *3 (N.D.N.Y. Jan. 20, 2015); *Palumbo v. Shulman*, 1998 WL 436367, at *3–4 (S.D.N.Y. July 27, 1998). As in those cases, Plaintiffs' "dealings with [] other clients, based on separately negotiated agreements to which plaintiffs were not privy, have no bearing on this lawsuit." *Palumbo v. Shulman*, 1998 WL 436367, at *3–4; *see also World Wrestling*, 204 F.R.D. at 265 (observing that treatment of one contracting party in a field does not "illuminate" treatment of another party in that field). Defendants argue nothing to distinguish these cases, and the Court should likewise reject the Contested Discovery.

### 2.    Request Nos. 3, 5, 7, and 9 Are Overbroad and Unduly Burdensome.

The Contested Discovery mirrors Westwin-specific discovery requests: agreements between Plaintiffs and Westwin or other clients (Nos. 2, 3), documents relating to services to Westwin / other clients (Nos. 4, 5), work product created for Westwin / other clients (Nos. 6, 7), and communications with Westwin / other clients (Nos. 8, 9). ECF No. 31-4 at 4–8. Plaintiffs agreed to produce documents in response Request Nos. 2, 4, 6, and 8 (collectively the "Westwin Requests"), collecting and identifying 20,585 documents from the period July 1, 2024 to the present to review. *Id.*; Declaration of Mari K. Bonthuis ¶¶ 2–3. To date, Plaintiffs have produced 4,211 documents, totaling 11,987 pages, and anticipate production of an additional 4,000 documents; most, if not all, are responsive to the Westwin Requests. *Id.* ¶¶ 4–6. Given that Woods LLC has been engaged to provide financial advisory services by no fewer than 25 other companies, partnerships, and government entities, *id.* ¶ 7, production of the same documents for these entities for Westwin's requested period starting on July 1, 2019[2] would require Plaintiffs to return to document custodians to collect additional documents and increase the documents to review and produce by orders of magnitude. Even if such documents were relevant to the issues here – which they are not – production would be disproportionate to any needs of this case and separately warrants rejection of these requests. *Gross v. Lunduski*, 304 F.R.D. 136, 151 (W.D.N.Y. 2014) ("Pursuant to Fed.R.Civ.P. 26(c) document requests may be denied where the requested party demonstrates that compliance constitutes an 'undue burden or expense.'"); *Sadofsky v. Fiesta Prods., LLC*, 252 F.R.D. 143, 152 (E.D.N.Y. 2008) ("Courts may limit discovery when it would cause an 'undue burden or expense' that outweighs its 'likely benefit.'").

### 3.    Local Rule 33.3(a) Precludes Interrogatory Nos. 3, 4, 5, 8, and 10.

The Contested Discovery interrogatories seek the identity of all clients to which Plaintiffs have provided financial advisory services (Nos. 3 and 4), all agreements for those services (No. 5), all persons or entities with which Plaintiffs have worked to provide those services (No. 8), and all investors that have funded those clients (No. 10). ECF No. 31-7 at 4–5, 7–9. Local Rule 33.3(a), however, limits interrogatories at the commencement of discovery. Regardless of whether information concerning Plaintiffs' other clients is relevant (which again, it is not), the information sought by these interrogatories goes far beyond the "witnesses with knowledge of information

---

[2] Defendant's only justification for this extended time period is that it goes back to when "the Plaintiff entities were created." Motion at 3.

relevant to the subject matter" permitted by Local Rule 33.3(a).[3] For this reason, and considering Plaintiffs' good faith amendment of its responses to provide answers related to this action, the Court should deny Defendant's Motion seeking responses to the Contested Discovery interrogatories.

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion. Should the Court require more information on Plaintiffs' third-party contracts, Plaintiffs respectfully request an informal conference consistent with Your Honor's practices.

Respectfully submitted,

*M. K. Bonthuis*

Mari K. Bonthuis

cc:    All counsel of record (via ECF)

Having reviewed the parties' letters and pleadings, the Court concludes that Defendants are entitled to most – but not all – of the information and documents they seek. Put simply, the information and documents are relevant (within the meaning of Rule 26 of the Federal Rules of Civil Procedure) given Defendants' allegation that Plaintiffs failed to comply with their obligation to provide "financial advisory services as customarily may be provided by WOODSC in connection with engagements of this type." ECF No. 15, ¶¶ 47-48. In so concluding, the Court intimates no view on whether that provision is ambiguous or whether the information and documents at issue would be admissible at a trial of this matter.

All of that said, the Court agrees with Plaintiffs that the requests are overbroad in two senses. First, Defendants do not need information and documents dating back to July 1, 2019. Accordingly, the Court grants Defendants' motion only as to the period from January 1, 2024, to the present. Second, the Court is skeptical that Defendants need the documents they seek with respect to all twenty-five of the "other companies, partnerships, and government entities" with which Plaintiffs have done business. ECF No. 32-1, ¶ 7. That is, one would think that whether Plaintiffs complied with their obligation to provide "financial advisory services as customarily may be provided by WOODSC in connection with engagements of this type" could be determined with a subset of those documents. For instance, Plaintiffs could identify some number of other engagements that, in their view, were closest to "this type" of engagement. Or some sort of sampling of the other engagements could be warranted. The parties should promptly meet and confer in an effort to reach agreement on the best way to narrow the requests for documents in light of the foregoing. Absent agreement, either side may file a letter-motion seeking further relief in accordance with the Court's standard procedures for discovery disputes.

The Clerk of Court is directed to terminate ECF No. 31.

SO ORDERED.

April 16, 2026

---

[3] Defendant's cited case on this point, *Steinberg v. Constellation Agency, LLC*, is easily distinguishable as the interrogatory there sought the names of all medical and mental health providers for a plaintiff who sought damages for severe emotional distress. Motion at 2 n.1; 2025 WL 1802981, at *3 (S.D.N.Y. July 1, 2025).

4